

**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

# Court of Common Pleas

**New Case Electronically Filed: COMPLAINT**
**July 1, 2026 21:26**

By: WILLIAM CRAIG BASHEIN 0034591

Confirmation Nbr. 3901922

| | |
|---|---|
| TIMOTHY A.BOYKO,FIDUCIARY,ESTATE-JAMIESON RITTER | CV 26 141856 |
| vs. | |
| CITY OF CLEVELAND, ET AL | **Judge:**  STEVEN E. GALL |

**Pages Filed:**  31

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| TIMOTHY A. BOYKO, FIDUCIARY FOR THE ESTATE OF JAMIESON RITTER 6133 Rockside Road Suite 301 Independence, Ohio 44131 | ) CASE NO.<br>)<br>) JUDGE<br>)<br>)<br>) COMPLAINT<br>) |
| Plaintiff | ) (Jury Demand Endorsed Hereon)<br>) |
| vs. | )<br>) |
| CITY OF CLEVELAND c/o Division of Police 1300 Ontario Street Cleveland, Ohio 44113 | )<br>)<br>)<br>)<br>) |
| and | )<br>) |
| DOROTHY A. TODD c/o City of Cleveland Division of Police 1300 Ontario Street Cleveland, Ohio 44113 | )<br>)<br>)<br>)<br>)<br>) |
| and | )<br>) |
| DORNAT "WAYNE" A. DRUMMOND c/o City of Cleveland 1300 Ontario Street Cleveland, Ohio 44113 | )<br>)<br>)<br>)<br>) |
| and | )<br>) |
| KEVIN WALKER c/o City of Cleveland Division of Police 1300 Ontario Street Cleveland, Ohio 44113 | )<br>)<br>)<br>)<br>)<br>) |
| and | )<br>) |

LAW OFFICES

BASHEIN & BASHEIN
CO., L.P.A.

TERMINAL TOWER

35ᵀᴴ FLOOR

50 PUBLIC SQUARE

CLEVELAND OH 44113

(216) 771-3239

1

SAMUEL MORRIS )
c/o City of Cleveland )
Division of Police )
1300 Ontario Street )
Cleveland, Ohio 44113 )
)
    and )
)
KEVIN KINCAID )
c/o City of Cleveland )
Division of Police )
1300 Ontario Street )
Cleveland, Ohio 44113 )
)
    and )
)
KENNETH RYAN )
c/o City of Cleveland )
Division of Police )
1300 Ontario Street )
Cleveland, Ohio 44113 )
)
    and )
)
BRIAN McENTEE )
c/o City of Cleveland )
Division of Police )
1300 Ontario Street )
Cleveland, Ohio 44113 )
)
    and )
)
ANDRIA CABANISS )
c/o City of Cleveland )
Division of Police )
1300 Ontario Street )
Cleveland, Ohio 44113 )
)
    and )
)
)
)
)
)
)

LAW OFFICES

BASHEIN & BASHEIN
CO., L.P.A.

TERMINAL TOWER

35TH FLOOR

50 PUBLIC SQUARE

CLEVELAND OH 44113

(216) 771-3239

2

```
JOHN DOES I-X                          )
OFFICERS AND CIVILIANS                 )
CURRENTLY AND FORMERLY                 )
EMPLOYED BY THE CITY OF                )
CLEVELAND                              )
c/o City of Cleveland                  )
Division of Police                     )
1300 Ontario Street                    )
Cleveland, Ohio 44113                  )
                                       )
            Defendants                 )
```

Plaintiff, Timothy A. Boyko, Fiduciary for the Estate of Jamieson Ritter, states for their Complaint against Defendants as follows:

<u>**PARTIES AND BACKGROUND**</u>

1.      At all times mentioned herein, Plaintiff Timothy A. Boyko (hereinafter "Boyko"), is the duly appointed Fiduciary for the Estate of Jamieson Ritter (hereinafter "Officer Ritter"). Officer Ritter was employed by the City of Cleveland, Division of Police, and was assigned to the Third District as a patrol officer. Timothy A. Boyko continues in his capacity as Fiduciary to date and brings this action as the representative for the exclusive benefit of the surviving next-of-kin of the Decedent, Jamieson Ritter. Officer Ritter's next-of-kin includes his parents, Jonathan Ritter and Karen Ritter, and his siblings, Alysia Ritter, Angelica Ritter and Jonathan Ritter, II. At the time of his death, Officer Ritter was a resident of Cuyahoga County and all of the misconduct, errors, and omissions, leading up to and during the incident that were a proximate cause of his death all occurred in Cuyahoga County.

2.      At all times mentioned herein, Defendant City of Cleveland, is a duly organized municipality under the laws of the State of Ohio and pursuant thereto operates and maintains a Division of Police (hereinafter "the Cleveland Police Department") that employs both commissioned police officers and civilians.

LAW OFFICES

BASHEIN & BASHEIN
CO., L.P.A.

TERMINAL TOWER

35ᵀᴴ FLOOR

50 PUBLIC SQUARE

CLEVELAND OH 44113

(216) 771-3239

3

3.     At all times mentioned herein, Defendant Dorothy Todd (hereinafter "Todd") is the Chief of the Cleveland Police Department and was the Police Chief at all relevant times described in Plaintiff's Complaint.

4.     At all times mentioned herein, Defendant Dornat "Wayne" A. Drummond (hereinafter "Drummond") is the Director of Public Safety for the City of Cleveland which includes oversight and supervision of the Cleveland Police Department and was the Safety Director and/or the Chief of Police during the relevant time periods described in Plaintiff's Complaint.

5.     At all times mentioned herein, Defendant Kenneth Walker was a Sergeant in the Cleveland Police Department and was the Officer in Charge (hereinafter "OIC") at the scene during the events of July 1, 2024, and July 4, 2024, regarding the attempted apprehension of an armed fugitive and suspect, Delawante Hardy (hereinafter "Hardy"), who had a felony arrest warrant for the shooting of his grandmother in the head on June 28, 2026, resulting in her death.

6.     At all times mentioned herein, Defendant Samuel Morris (hereinafter "Morris") is the Deputy Chief of Operations for the Cleveland Police Department and was the Deputy Chief at all relevant time periods described in Plaintiff's Complaint.

7.     At all times mentioned herein, Defendant Kevin Kincaid is the Commander of Specialized Units for the Cleveland Police Department that includes the Special Weapons and Tactical Unit (hereinafter "S.W.A.T.") in the Cleveland Police Department and was the Commander of Specialized Units at all relevant times described in Plaintiff's Complaint.

8.     At all times mentioned herein, Defendant Kenneth Ryan is a Lieutenant in the Cleveland Police Department and the Officer in Charge (hereinafter "OIC") of the "S.W.A.T." unit and was the OIC of S.W.A.T. at all relevant times described in Plaintiff's Complaint.

LAW OFFICES

BASHEIN & BASHEIN
CO., L.P.A.

TERMINAL TOWER

35ᵀᴴ FLOOR

50 PUBLIC SQUARE

CLEVELAND OH 44113

(216) 771-3239

4

9. At all times mentioned herein, Defendant Brian McEntee was the Commander responsible of the Communication Control Sector (hereinafter "Cleveland Police Radio Dispatch"), for all relevant times described in Plaintiff's Complaint.

10. At all times mentioned herein, Defendant Andria Cabaniss is the Chief Dispatcher for the Cleveland Police Department Radio Dispatch and was the Chief Dispatcher at all relevant times described in Plaintiff's Complaint. Cabaniss, as Chief Dispatcher, was and is responsible for ensuring that all of the police dispatchers under her supervision comply with all policies, unit procedures, and orders directed or related to the duties and responsibilities of Cleveland Police Radio Dispatchers.

11. At all times mentioned herein, Defendants John Does I-X are police officers, dispatchers, and/or other current or former employees for the City of Cleveland whose names and addresses are currently unknown to Plaintiff. Plaintiff has been unable to presently ascertain their identity but reasonably believes their conduct may be a proximate cause of the circumstances leading to the wrongful death described herein. These John Doe Defendants have knowledge of their involvement in the events leading up to the within action and will in no way be prejudiced in the maintenance of their defense on the merits within the meaning of Rule 15(D) of the Ohio Rules of Civil Procedure because of their constructive or actual notice of the institution of this case. Except for the inability of Plaintiff to discover the names of these John Doe Defendants, this action would be brought against them as well in their proper true and exact names and capacities. Once that information is obtained from the Defendant, City of Cleveland, during discovery, those individuals, if any, will be substituted as Defendants.

12. In the years leading up to the killing of Decedent Officer Ritter the Cleveland Police Department was intentionally and knowingly operating a grossly understaffed police force

LAW OFFICES

BASHEIN & BASHEIN
CO., L.P.A.

TERMINAL TOWER

35TH FLOOR

50 PUBLIC SQUARE

CLEVELAND OH 44113

(216) 771-3239

due largely in part to purposefully malicious, bad faith, wanton, and reckless employment practices, and unlawful decision-making by Defendants Todd and Drummond including the issuing of false, retaliatory, and excessive discipline repeatedly against officers and failing to provide relevant, proper, and adequate training and resources to Cleveland Police officers, thus creating an unsafe environment for officers in the Division under their command including the Decedent, Officer Jamieson Ritter. These unsafe conditions caused literally hundreds of officers to transfer to other departments, retire early, or refuse to remain in the police department by utilizing the Deferred Retirement Option Plan (hereinafter "DROP"). Many current officers are also actively seeking employment as police officers with other agencies or departments due to the well-known unsafe conditions created by Defendants City of Cleveland, Todd, and Drummond. These unsafe conditions directly impacted and caused emotional distress and damages to Decedent Officer Ritter prior to his death, as well as hundreds if not over a thousand officers in the City of Cleveland over the past several years. This hostile work environment also led Decedent Officer Ritter to begin to seek another job as a police officer in another department prior to his death.

13.    As a result of the severe manpower shortages and the unlawful, purposefully malicious, bad faith, wanton, and reckless employment practices and misconduct of Defendants City of Cleveland, Todd, and Drummond, the Districts located within the City of Cleveland had far fewer officers on patrol on the streets of Cleveland, as well as far fewer supervisors in their districts that were even available to respond to and/or supervise an incident and/or crime scene. Oftentimes a single Sergeant or Lieutenant would be the only supervisor (OIC) on the road for an entire district and Priority One Calls could not be responded to at times for over an hour by the few officers on the street.

LAW OFFICES

BASHEIN & BASHEIN
CO., L.P.A.

TERMINAL TOWER

35TH FLOOR

50 PUBLIC SQUARE

CLEVELAND OH 44113

(216) 771-3239

6

14. At the time of the incident and for a period of nine years prior to the incident, the Cleveland Police Department had been operating under a Consent Decree with the United States Department of Justice (hereinafter "DOJ"). The Consent Decree included a number of mandated provisions which led to the promulgation and issuance of various General Police Orders ("GPOs"), directives, procedures, and the implementation of required training and resources which were not fully complied with by Defendant City of Cleveland.

15. At all times mentioned herein, the Cleveland Police Department set forth their policies and procedures in Divisional Notices, GPOs, Unit Procedure Manuals, as well as a Manual of Rules (hereinafter "Manual of Rules"). All Cleveland police officers are required to comply with these GPOs, Notices, Unit Procedural Manuals, and Manual of Rules, as well as Ohio law. In the instant action, numerous GPOs, directives, and procedures were deliberately violated by one or more of the Defendants leading up to and during the incidents of July 1, 2024, and July 4, 2024, that were a direct and proximate cause of the death of Decedent Officer Ritter.

16. On June 28, 2024, Hardy shot his grandmother, Beatrice Porter, in the back of her head and stole her firearm at a residence located in Garfield Heights. As a result of this heinous and violent criminal act, which ultimately resulted in Porter's death, a felony arrest warrant was issued by the City of Garfield Heights for the capture and arrest of Hardy. At that point Hardy was considered a fugitive and prior to July 4, 2024, Hardy took numerous actions to evade capture by the police.

17. On July 1, 2024, the Cleveland Police Department received information from Hardy's Uncle that he was likely located inside his mother's residence located at 1510 E. 80th Street, Cleveland, Ohio, and was likely armed, violent, and extremely dangerous. One or more of the Defendants also knew on that date that Hardy was wanted on a felony warrant for the

LAW OFFICES

BASHEIN & BASHEIN
CO., L.P.A.

TERMINAL TOWER

35ᵀᴴ FLOOR

50 PUBLIC SQUARE

CLEVELAND OH 44113

(216) 771-3239

7

shooting of his grandmother at the time. Hardy's Uncle placed 911 calls where he spoke with Cleveland Police Dispatchers and confirmed this information causing the Department to dispatch Third District officers to the residence.

18. One or more of the Defendants were further aware, or should have been aware, that Hardy had previously been determined to be mentally incompetent during a prosecution by the City of Cleveland for committing a criminal offense that ultimately led to the dismissal of charges against him in the Cleveland Municipal Court because he had not been restored to competency within the required statutory period of time.

19. Prior to and/or on July 1, 2024, one or more of the Defendants, including Cleveland police dispatchers, were notified about Hardy's violent shooting of his grandmother, his outstanding warrant, and that he was violent, armed, extremely dangerous, and attempting to avoid capture.

20. As required by the Cleveland Police Department's own GPOs, Manual of Rules, procedures, and directives, officers were required to utilize "deescalation tactics," if feasible. These deescalation requirements and orders are spelled out in great detail in numerous GPOs and training documents. As a result, and pursuant to numerous GPOs and trainings, the OIC of a scene involving a barricaded armed suspect wanted on a felony murder warrant, was required to set up a perimeter around the structure where the wanted fugitive was barricaded, avoid a confrontation with the armed suspect, and immediately request Cleveland Police Dispatch to send S.W.A.T. and/or additional tactical teams to the scene. Any broadcasts to or from Radio Dispatch with patrol officers or the OIC regarding an armed barricaded suspect wanted for a felony warrant required Cleveland police radio dispatchers pursuant to their own orders, to trigger a Dispatch notification to Defendants Kincaid, Morris, and the District Commander as

LAW OFFICES

BASHEIN & BASHEIN
CO., L.P.A.

TERMINAL TOWER

35ᵀᴴ FLOOR

50 PUBLIC SQUARE

CLEVELAND OH 44113

(216) 771-3239

8

well as the OICs of various tactical units. This alert is known as a "Code Red" as spelled out in City GPOs and procedures.

21.     In the case of an armed barricaded fugitive, the OIC at the scene and the Dispatch Supervisor (or one of their direct reports) were also required to switch to Channel 9 to confirm the warrant and allow this alert to be sent to multiple Police Supervisors, Commanders, and the Defendant Deputy Chief of Operations.

22.     On July 1, 2024, officers from the Third District responded to a Priority One Cleveland police dispatch assignment relating to the presence of Hardy at the residence located at 1510 E. 80th Street, Cleveland, Ohio. At the scene Defendant Sgt. Walker was the OIC. Defendant Walker contacted Dispatch (either through radio or cellular communication) and requested that S.W.A.T. respond to the home. Walker, as the OIC, had determined that S.W.A.T. was required to respond due to multiple criteria in the GPOs mandating their response and assistance. Officers at the scene and Defendant Walker knew that the presence of S.W.A.T. would be an advantage in helping resolve the incident by safely deescalating the situation which would hopefully lead to the apprehension of Hardy without the use of lethal force. The Third District officers present without the presence of S.W.A.T. were not tactically trained, had no body armor, shields, and helmets, and had limited firearm capability if deadly force was required. If Hardy engaged S.W.A.T. with the use of deadly force, they would be in a far better position to effectively deal with any use of force by Hardy.

23.     Incredibly, Walker's request for the presence of S.W.A.T. on July 1, 2024, was denied and S.W.A.T. failed to respond to the scene in violation of Cleveland Police GPOs, unit procedures, and training. In addition, the Cleveland Police GPOs and orders required the immediate Code Red notification of one or more of the other Defendants, including Kincaid,

LAW OFFICES

BASHEIN & BASHEIN
CO., L.P.A.

TERMINAL TOWER

35TH FLOOR

50 PUBLIC SQUARE

CLEVELAND OH 44113

(216) 771-3239

9

Morris, and the Third District Commander, as well as numerous other OICs of tactically trained units. If S.W.A.T. refused to respond, Defendants Morris and Kincaid could have ordered S.W.A.T. to respond. It is unknown if this alert was issued to Defendants Kincaid and Morris. If S.W.A.T. was unable to come to the scene, one or more of the Defendants should and could have contacted either the Cuyahoga County S.W.A.T. unit or the United States Marshall's Office for assistance to come to apprehend Hardy who was a wanted fugitive on a violent felony warrant.

24.     After S.W.A.T. refused and/or failed to respond to the scene on July 1, 2024, officers from the Third District, acting under the direction of their supervisors, including Walker, had to enter and clear the home at 1510 E. 80th Street, Cleveland, Ohio. The home had narrow stairways and officers who entered the home were funneled into what could have been a shooting gallery at great risk of severe injury or death to the officers. After searching the residence, it was determined that Hardy was not present. Hardy was likely tipped off by another relative that police were on the way to the home and he fled before they arrived. Had Hardy been present at home on July 1, 2024, and used deadly force, it is likely numerous officers would have been shot because S.W.A.T. or another tactical unit was not present.

25.     On July 4, 2024, beginning at approximately 12:01 a.m., the City of Cleveland's Police Dispatch began to receive multiple 911 calls from Hardy's Uncle, who confirmed that Hardy had murdered his grandmother and was in fact present in his mother's residence and could be seen in the window. The Uncle told Cleveland Dispatchers that Hardy was likely armed and dangerous. Hardy's Uncle literally begged dispatchers to send police to come to the scene where Hardy was barricaded in the house during multiple calls for over an hour. One or more of the Defendants and responding officers and Defendant Walker were again advised prior to and upon

LAW OFFICES

BASHEIN & BASHEIN
CO., L.P.A.

TERMINAL TOWER

35TH FLOOR

50 PUBLIC SQUARE

CLEVELAND OH 44113

(216) 771-3239

10

their arrival that Hardy was a violent fugitive wanted on a warrant for the murder of his grandmother.

26.     In response to these multiple 911 calls, Cleveland Police dispatched officers from the Third District, most of whom were present during the July 1, 2024 call, to the home at 1510 E. 80th Street, Cleveland, Ohio, including the Decedent Officer Ritter and Defendant Walker who once again was the OIC at the scene. The first officers did not arrive until approximately 1:14 a.m., over an hour after the multiple urgent and frantic 911 calls.

27.     Upon their arrival, officers set up a perimeter around the house. This time rather than calling Cleveland Police Dispatch for S.W.A.T. to respond to the scene, Walker instead made the decision to attempt to call Hardy out from inside the barricaded residence with only his own Third District patrolmen present. Defendant Walker's deliberate actions in failing to request S.W.A.T. (or another tactical team) or insist that dispatch send out an alert to higher ranking officers including his Commander and the Deputy Chief, were a violation of Cleveland Police Department GPOs, procedures, and directives.

28.     Despite information provided by Defendant Walker that the incident involved an armed barricaded suspect at the scene wanted for a felony murder, Cleveland Police Dispatch under the command and supervision of Defendants McEntee and Cabaniss did not follow the relevant GPOs and unit procedures that applied to them by failing to initiate a Code Red or similar alert notification to Defendants, Morris, Kincaid, the Third District Commander, the Supervisor of the Narcotics Unit, Gang Unit, Nice Unit, and/or the Fugitive Task Force Unit. If such Orders were followed and the notifications were in fact sent, they were not acted upon by any of the recipients including Defendants Morris, and Kincaid.

LAW OFFICES

BASHEIN & BASHEIN
CO., L.P.A.

TERMINAL TOWER

35TH FLOOR

50 PUBLIC SQUARE

CLEVELAND OH 44113

(216) 771-3239

11

29.     Instead, a standoff with Hardy inside the barricaded home began and lasted for over 20 minutes. During that time period, Decedent, Officer Ritter, was ordered by Walker to use the speaker on his police zone car to unexplainably call Hardy outside of the house rather than maintain a perimeter, deescalate the situation, and request or demand that S.W.A.T. or other tactical trained units respond to the scene. Since Walker knew S.W.A.T. was not coming, Walker should have never escalated the situation by calling the armed and dangerous fugitive to come outside creating an almost certain extremely dangerous and armed confrontation.

30.     At all times mentioned herein, the patrol officers at the scene were not trained in tactical operations like Cleveland's S.W.A.T. unit and did not have full body armor, helmets, shields, firearms, and additional equipment the S.W.A.T. unit had or other specialized tactical units in Cleveland. Outrageously, the patrolmen at the scene on July 4, 2024 (just as they had on July 1, 2024), were forced to attempt to apprehend and confront Hardy on their own.

31.     After being prompted by Walker to come out of the house, rather than to continue to deescalate the situation and leave the barricaded Hardy inside the house until S.W.A.T. or another tactical unit would arrive, Hardy obliged Walker's request and exited the rear of the home carrying two long machetes and a firearm. Hardy then hopped on a bicycle at the rear of his home and began to operate the bicycle from the rear of the home down the north side of his mother's house to E. 80th Street.

32.     Once Hardy was able reach the street, he initially wanted to turn north toward Wade Park but, after seeing an officer with a long gun in his path, he then turned his bicycle south on E. 80th Street, where numerous officers were located on both the east and west side of the street. Officers commanded Hardy to drop his weapons and surrender. At one point, as Hardy was bicycling past the officers, two of the officers pushed Hardy off the bicycle to the ground.

LAW OFFICES

BASHEIN & BASHEIN
CO., L.P.A.

TERMINAL TOWER

35TH FLOOR

50 PUBLIC SQUARE

CLEVELAND OH 44113

(216) 771-3239

12

Numerous patrol officers then jumped on Hardy and attempted to wrestle the firearm away from him. A lengthy struggle ensued, but Hardy was able to maintain control of the trigger of the firearm. During the struggle, Hardy fired approximately five shots, one of which struck Decedent, Officer Ritter, and numerous other shots came within millimeters of hitting several of the other officers nearly causing their deaths as well.

33. The patrolmen from the Third District should have never been put in a position of having to encounter and likely have to use force against Hardy that night. Officer Ritter's murder by Hardy was totally preventable and should have never been allowed to occur as a result of the willful, deliberate, and intentional conduct of one or more of the Defendants in violating various GPOs, policies, procedures, and directives on both July 1, 2024, and July 4, 2024. Had these orders and procedures been followed by one or more of the Defendants, Officer Ritter would be alive today and the other officers present that tragic evening would also have not faced near death.

34. The failure by police dispatch under the supervision of Defendants McEntee and Cabaniss and the John Doe Dispatchers to send out a notification (including the call up of S.W.A.T.) to Defendants Kincaid, Morris, Murphy, and the Third District Commander, or request help from another tactical unit from Cleveland, Cuyahoga County, or the United States Marshall Service, was also a direct and proximate cause of the death of Officer Ritter and almost led to the death of several other officers present. Not only was Decedent Officer Ritter a victim of these willful and deliberate violations of applicable GPOs and procedures by one or more of the Defendants, but all of the Cleveland police officers present at the scene on July 4, 2024, including those who had to wrestle with and were nearly killed by Hardy while he fired off his weapon, were victims as well.

LAW OFFICES

BASHEIN & BASHEIN
CO., L.P.A.

TERMINAL TOWER

35ᵀᴴ FLOOR

50 PUBLIC SQUARE

CLEVELAND OH 44113

(216) 771-3239

13

35.     As a result of Defendants' Todd, Drummond, and the City of Cleveland's repeated actions in issuing false and improper discipline after an officer's use of force on prior occasions (including the use of their firearms), an atmosphere was created within the Cleveland Police Department that officers were extremely fearful of using their firearms when encountering an imminent risk of death or serious injury by an armed suspect even when state law, the law of the United States Supreme Court and Ohio Supreme Court allowed and/or required them to do so. In the past, under Defendants Todd and Drummond's unsafe employment environment and unlawful, purposefully malicious, bad faith, wanton, and reckless employment practices, officers who used force against suspects—including lethal force with their firearms—faced false, unlawful, and unreasonable discipline, were placed on long-term administrative leave causing them undue financial harm and stress, and were routinely then passed over for promotion for taking heroic actions as police officers.

36.     Defendants Todd, Drummond, and the City of Cleveland created an atmosphere of a lose-lose situation for any Cleveland Police Officer in the Division facing an imminent threat of death or serious bodily injury when encountering a suspect who brandished, used, or attempted to use a firearm or other deadly weapon. If the officer used lethal force, they would likely face discipline, long-term financial penalties, and would be passed over for promotion. If they did not use deadly force, they risked their own death or serious injury and/or the death of others.

37.     After Hardy shot at various officers including Officer Ritter on July 4, 2024, fellow officers during the struggle determined that Officer Ritter had been struck by a gunshot. Valiant efforts were made to render lifesaving measures at the scene by several of Officer Ritter's fellow patrol officers while other officers had to continue to struggle with Hardy over his weapons. Despite the fact EMS had been called, the decision was made they had to do a "grab and go" in

LAW OFFICES

BASHEIN & BASHEIN
CO., L.P.A.

TERMINAL TOWER

35ᵀᴴ FLOOR

50 PUBLIC SQUARE

CLEVELAND OH 44113

(216) 771-3239

which Officer Ritter was transported to University Hospitals of Cleveland by a police car in order to get Officer Ritter to their Trauma Center as soon as possible in an effort to save his life.

38.     Officer Ritter was transported in a police car from the scene to University Hospitals' Trauma Center where, after attempted lifesaving care by the attending physicians and nurses, he was pronounced dead.

39.     After Defendant Todd learned of the death of Decedent, Officer Ritter, while he was in the line of duty, she was required to follow certain GPOs, policies, and procedures for the prompt but proper and safe notification of his death to his immediate family (Officer Ritter's emergency contacts). The mandatory orders on the notification of an officer killed in the line of duty required the Cleveland Police Department to notify local law enforcement where the officer's parents (Officer Ritter's emergency contacts) resided so that notification could be made in person to ensure the legitimacy of the notification and the safety of the family upon learning the tragic news that their son was murdered while he was acting in the line of duty. This procedure was also well known by the Ritter family including Decedent's father who was a retired police officer.

40.     In blatant violation of GPOs and the notification procedure, Defendant Todd instead cruelly ordered another officer from the Cleveland Police Department to telephone the Ritters and tell them their son had been killed in the middle of the night. After several attempts to get ahold of them, they were awoken and informed by a cell phone call from another officer that their son had been killed. The officer they spoke with was instructed by the Chief to call and tell them.

41.     The Ritters, who were well aware that this was not the proper protocol for notification of a family member's death, did not believe the calls and notification were

LAW OFFICES

BASHEIN & BASHEIN
CO., L.P.A.

TERMINAL TOWER

35ᵀᴴ FLOOR

50 PUBLIC SQUARE

CLEVELAND OH 44113

(216) 771-3239

15

legitimate. While extremely distraught and in grief of their son's possible murder, they made numerous calls to their local enforcement departments in New York, and Cleveland Dispatch in attempts to determine the legitimacy of the notification of the death of their son by phone given that it was contrary to the GPOs, and procedures of both the Cleveland Police Department, as well as any other police department in the United States. This notification process would apply whether it was dealing with an officer killed in the line of duty, or any other private citizen.

42.    In addition to Defendant Todd's deliberate and cruel violation of GPOs and procedures regarding notification related to the death of Officer Ritter to his family, Todd repeatedly violated other GPOs surrounding Officer Ritter's death including requiring the majority of the officers present and involved in the shooting back to work in only three days despite many of them being in a severely emotional and fragile state. Todd had the authority to provide them up to 14 days off for paid leave due to the PTSD, emotional trauma, shock, and/or grief they all experienced. Todd further required any officers who chose to attend the funeral of Decedent, Officer Ritter, to use their own vacation time to do so rather than receiving a paid day to pay their respects to a fellow fallen officer.

43.    Following the incident, the Ritters made multiple complaints to the Office of Professional Standards ("OPS") which is a governing body and part of the City of Cleveland. OPS serves in conjunction with the Civilian Review Board (hereinafter "CRB") pursuant to the Consent Decree for oversight of the activities and conduct of the members of the Division of Police. OPS at the time of Officer Ritter's killing was led by Marcus Perez, a long time United States Army Veteran, who was well familiar with the Cleveland Police Department's GPOs, the Consent Decree, the Manual of Rules, the required deescalation orders and procedures, as well

LAW OFFICES

BASHEIN & BASHEIN
CO., L.P.A.

TERMINAL TOWER

35ᵀᴴ FLOOR

50 PUBLIC SQUARE

CLEVELAND OH 44113

(216) 771-3239

16

as the requirement to call and notify S.W.A.T. to come to a scene in the event of a barricaded suspect who was violent, armed, and wanted for murder.

44. The Ritter family submitted two written complaints to OPS regarding the conduct of some and/or all of the Defendants. As a result of the OPS interviews of the Ritters and review of the complaints, OPS issued a written summary of the complaints arising out of the death of Officer Ritter and the improper notification of his death with his family. OPS further began investigating the conduct of one or more of the Defendants leading up to Officer Ritter's death.

45. Within hours following the issuance by OPS of the last documents related to Todd and/or other Defendants, as well as, OPS obtaining internal documents directly related to their investigation of one or more of the Defendants' roles in Officer Ritter's death, the OPS office computers were suddenly shut down by the City of Cleveland, and OPS had no further ability to gain access to internal City of Cleveland information relative to their investigation. OPS was "unplugged" by the Defendant, City of Cleveland in a deliberate effort to obstruct and hinder the investigation of Todd, and one or more of the other Defendants, leading up to the death of Officer Ritter. To date, it is believed an investigation has never been done by OPS as a result of the City of Cleveland's obstruction and unlawful conduct to stop such an investigation.

46. Subsequently, Marcus Perez was then terminated from his position as head of OPS which Plaintiff reasonably believes is a result of his attempting to investigate charges against Defendant Todd and/or one or more of the other Defendants whose conduct contributed to the death of Officer Ritter.

47. As a direct and proximate result of one or more of the Defendants' conduct as described above and will be further established during discovery and at trial, Ritter was caused

LAW OFFICES

BASHEIN & BASHEIN
CO., L.P.A.

TERMINAL TOWER

35ᵀᴴ FLOOR

50 PUBLIC SQUARE

CLEVELAND OH 44113

(216) 771-3239

17

to suffer a severe and traumatic gunshot wound and injuries that caused conscience pain and suffering prior to his wrongful death.

**WRONGFUL DEATH CAUSE OF ACTION
OF PLAINITFF, ADMINISTRATOR, TIMOTHY A. BOYKO
ON BEHALF OF THE ESTATE OF JAMIESON RITTER
<u>COUNT ONE</u>
(Common Law Workplace Tort Against The Individual Defendants)**

48.     Plaintiff incorporates by reference all the allegations contained in this Complaint as if fully rewritten herein.

49.     At all times mentioned herein, one or more of the individual Defendants knew that the aforementioned unsafe working conditions, lack of resources, manpower, and training, as well as the deliberate, intentional, and knowing failure to follow GPOs, policies, directives, and procedures on July 1, 2024 and July 4, 2024, created an unreasonably dangerous, hazardous, and unsafe situation for officers at the standoff at 1510 E. 80th Street, Cleveland, Ohio, on July 4, 2024, where Hardy was barricaded inside the residence with numerous weapons.

50.     The Defendants' actions represented purposefully malicious, bad faith, wanton, and reckless employment practices. R.C. 2744.03(A)(5).

51.     At all times mentioned herein, one or more of the Defendants knew that this was a hazardous, unsafe, and extremely dangerous situation and condition by failing to properly train its supervisors, including Defendant Walker, for proper incident command procedures as well as, the civilian and police supervisors at Cleveland Police Dispatch, for their failure to contact or call up S.W.A.T. on July 4, 2024, and issue a Code Red or similar alert to multiple Supervisors, Commanders, and the Deputy Chief. One or more of the Defendants further knew that without a tactical team present on July 4, 2024, as required under Cleveland police orders and procedures, their conduct was substantially certain to result in injuries or death to one of their officers who

LAW OFFICES

BASHEIN & BASHEIN
CO., L.P.A.

TERMINAL TOWER

35ᵀᴴ FLOOR

50 PUBLIC SQUARE

CLEVELAND OH 44113

(216) 771-3239

18

were being forced to confront the armed and violent Hardy who was wanted on a felony warrant for shooting his grandmother. Despite this knowledge, one or more of the Defendants deliberately violated Cleveland Police policies, procedures, GPOs, and/or directives in failing to urgently request S.W.A.T. or other tactical units. In addition, Defendant Walker instructed an officer to order Hardy on a loudspeaker to come out of the house in which he was barricaded knowing he was fully armed and dangerous and knowing S.W.A.T. had not been called. These were deliberate acts of escalation by Defendant Walker and not "deescalation" in violation of department GPOs, training, and procedures.

52.  Under these conditions, Decedent, Officer Ritter, and the other patrol officers at the scene were required to work in a hazardous, unreasonably unsafe, and dangerous conditions due to one or more of the Defendants' failure to address these known safety hazards and follow the GPOs and procedures including annual or frequent training to enforce and require their use. Despite their knowledge, one or more of the Defendants permitted and required Decedent, Officer Ritter, and other patrol officers present at the scene, to encounter Hardy who was heavily armed, extremely dangerous, and a fugitive wanted for murder, without the benefit of tactical training and equipment like S.W.A.T. or other tactical units.

53.  At all times mentioned herein, at least one or more of the Defendants knew that requiring the officers to encounter Hardy on E. 80th Street, Cleveland, Ohio, on July 4, 2024, without the benefit of S.W.A.T. or another tactical unit was unreasonably dangerous, unsafe, in violation of Cleveland Police protocols, policies, rules, practices, customs, and GPOs, and would likely result in serious injuries or death to an officer. Despite such knowledge, one or more of the Defendants permitted, allowed, and instructed officers, including Officer Ritter, to call Hardy out of the house leading to the likely use of deadly force by the suspect against officers present.

LAW OFFICES

BASHEIN & BASHEIN
CO., L.P.A.

TERMINAL TOWER

35TH FLOOR

50 PUBLIC SQUARE

CLEVELAND OH 44113

(216) 771-3239

19

54.     At all times mentioned herein, one or more of the Defendants failed to properly develop, train, promulgate, implement, enforce, and require OICs like Defendant Walker to notify dispatch for an immediate call-up of S.W.A.T. from the City of Cleveland. If S.W.A.T. was unavailable or refused to respond, Cuyahoga County S.W.A.T. or the U.S. Marshall's Office, and/or other Cleveland Police Department tactical units should have been called to the scene to apprehend the barricaded fugitive. As a direct and proximate result of one or more of the Defendants' deliberate conduct in their failure to properly and adequately train and reinforce that training to prevent an unreasonable risk to their officers, Decedent Officer Ritter sustained severe and debilitating injuries to his person that subsequently caused his death.

55.     As a direct and proximate result of one or more of the Defendants' deliberate, intentional, and knowing conduct as described herein and otherwise established at a trial, Officer Ritter's beneficiaries have suffered substantial damages and losses as previously described herein which are expected to be permanent and ongoing.

56.     At all times mentioned herein, Defendants knew that if Officer Ritter was subjected to the hazardous and dangerous conditions as described herein, then harm to him was substantially certain to occur.

57.     At all times mentioned herein, one or more of the Defendants required Officer Ritter to engage in a law enforcement activity under those conditions which was known to be substantially certain to cause injury and/or death thus establishing a claim for relief under *Fyfe v. Jeno's, Inc.*, 59 Ohio St.3d 115 (1991).

58.     At all times mentioned herein, one or more of the Defendants, including Todd, Drummond, Morris, McEntee, and Cabaniss, failed to properly ensure the training, instruction, enforcement, and compliance of GPOs so that the OIC and Cleveland Police Dispatch would

LAW OFFICES

BASHEIN & BASHEIN
CO., L.P.A.

TERMINAL TOWER

35ᵀᴴ FLOOR

50 PUBLIC SQUARE

CLEVELAND OH 44113

(216) 771-3239

20

follow proper GPOs, policies, directives, and procedures when dealing with Hardy by promptly calling S.W.A.T. and notify Senior Commanders and Defendant, Deputy Chief Morris.

59. At all times mentioned herein, Defendant Walker failed to contact and call for assistance from S.W.A.T. or other tactical units on July 4, 2024. If Walker did so and S.W.A.T. refused to come to the scene, Dispatch and Walker should have contacted his supervisors including his Third District Commander to ensure that S.W.A.T. or other tactical units would be notified and come to the scene, as required, to apprehend this dangerous and armed fugitive, rather than forcing Third District patrol officers to try to apprehend and confront Hardy themselves. One or more of the Defendants knew these officers would likely face imminent threat of death or serious injury due to their lack of tactical training, equipment or additional firepower when ordered to attempt to apprehend and confront the armed and dangerous Hardy.

60. At all times mentioned herein, Defendants Cabaniss, McEntee, and the John Doe Dispatchers responsible for District 3 and Channel 9 (Fugitive Channel) deliberately failed to notify Defendants Morris, Kincade, Ryan, the Third District Commander, and other supervisors of tactical units through a Code Red or similar alert system. If such notification did in fact go out, then it was then deliberately ignored by one or more of those Defendants. If a notification occurred but was ignored, Walker and the officers present were then left to deal with the barricaded suspect on their own without proper tactical training and equipment.

61. At all times mentioned herein, one or more of the Defendants knew that the working conditions of patrolmen and patrol supervisors in the City of Cleveland was extremely hazardous and dangerous due to insufficient staffing, lack of resources, lack of training, and lack of nationally recognized additional equipment and resources to deal with violent and dangerous felons barricaded in structures. In addition, due to the hostile work environment created by

LAW OFFICES

BASHEIN & BASHEIN
CO., L.P.A.

TERMINAL TOWER

35TH FLOOR

50 PUBLIC SQUARE

CLEVELAND OH 44113

(216) 771-3239

21

Defendants Todd and Drummond, the City of Cleveland police officers were highly discouraged and punished if they lawfully used deadly force to save their own lives or the lives of others.

62.     This hostile work environment Officer Ritter and other officers faced that was created by Defendants Todd, Drummond, and the City of Cleveland's use of false, retaliatory, exaggerated, and unlawful discipline involving cases that included an officer's lawful use of force. Despite Defendants' conduct and actual knowledge of the dangers in creating a hostile work environment, one or more of the Defendants required Officer Ritter and other Third District patrolmen to apprehend the unreasonably dangerous, and armed felony fugitive Hardy without proper training, resources, and the benefit of S.W.A.T. and/or other tactical units.

63.     As a direct and proximate result of the aforementioned incident and one or more of the Defendants' conduct, Officer Ritter's next-of-kin have suffered mental anguish, grief, loss of his services, support, society, companionship, and perspective inheritance pursuant to provisions of the Ohio Revised Code including R.C. 2125.02.

64.     As a direct and proximate result of Defendants' conduct, Plaintiff and beneficiaries of the Estate have, therefore, been injured and damaged in a sum in excess of TWENTY-FIVE THOUSAND AND 00/100 DOLLARS ($25,000.00) for compensatory and punitive damages.

## COUNT TWO
### (Statutory Intentional Tort Against Defendant City of Cleveland Only)

65.     Plaintiff incorporates by reference all the allegations contained in this Complaint as if fully rewritten herein.

66.     At all times mentioned herein, Defendant City of Cleveland knew that the aforementioned patrolmen in the City of Cleveland who were understaffed, undertrained, lacked proper resources, equipment, firearms, protective armor, and were not protected by S.W.A.T. or

LAW OFFICES

BASHEIN & BASHEIN
CO., L.P.A.

TERMINAL TOWER

35TH FLOOR

50 PUBLIC SQUARE

CLEVELAND OH 44113

(216) 771-3239

22

other tactical units when dealing with a barricaded fugitive like Hardy who was an extremely unsafe and a dangerous condition. Despite this actual knowledge, Defendant, City of Cleveland, required Officer Ritter and other patrolmen to work in an unsafe environment due to their deliberate conduct and actions in creating such an environment and such conditions.

67.     At all times mentioned herein, Defendant City of Cleveland knew that the conditions encountered by patrol officers, including that of Officer Ritter, were so hazardous, unsafe, and dangerous, as a result of their conduct and actions that they would likely result in serious injuries and/or death to one or more of their patrolmen. Despite this knowledge, Defendant City of Cleveland instructed and required Officer Ritter and other patrol officers to work under these dangerous conditions in violation of GPOs, policies, and procedures, including the mandatory request and use of S.W.A.T. or other tactical units.

68.     At all times mentioned herein, Defendant, City of Cleveland, knew that if Officer Ritter was subjected to these unreasonably hazardous, unsafe, and dangerous conditions on July 4, 2024, then serious and significant harm to Officer Ritter and/or other officers present was substantially certain to occur.

69.     At all times mentioned herein, Defendant, City of Cleveland, knew their actions were substantially certain to cause injury or death, and thus establishes a claim for relief under R.C. 2745.01.

70.     At all times mentioned herein, Defendant City of Cleveland intentionally, deliberately, conscientiously, and knowingly created an atmosphere where these understaffed officers were prevented or dissuaded from lawfully using deadly force to save their lives or the lives of others.

LAW OFFICES

BASHEIN & BASHEIN
CO., L.P.A.

TERMINAL TOWER

35ᵀᴴ FLOOR

50 PUBLIC SQUARE

CLEVELAND OH 44113

(216) 771-3239

23

71.     At all times mentioned herein, Defendant City of Cleveland deliberately, intentionally, and knowingly failed to follow, train, ensue, and enforce the compliance of GPOs, policies, and procedures, to ensure that S.W.A.T. would be called up by Walker and a Code Red notification would be issued by the Cleveland Dispatch in order to deal with the armed fugitives barricaded inside his mother's home so that required "deescalation" would take place. In this case, had S.W.A.T. been called and arrived at the scene, they would have likely safely removed Hardy from the home rather than forcing an encounter with him resulting in the use of deadly force by him or any officers. If Hardy attempted to use force against S.W.A.T. or other tactical units, they would be far better equipped, protected, trained, and carry additional fire power to deal with and, if necessary, utilize any required deadly force against Hardy rather than the ill-equipped and tactically untrained Third District patrolmen.

72.     At all times mentioned herein Defendant City of Cleveland's deliberate failure to call up and utilize a well-equipped and trained S.W.A.T. team at the site on July 4, 2024, their removal of patrol rifles from almost all police cars, is a presumption of specific intent as set forth in R.C. 2745.01(C).

73.     As a direct and proximate result of Defendant City of Cleveland's deliberate and intentional tortious conduct as described herein and otherwise established at trial, Officer Ritter's beneficiaries have suffered substantial damages and losses as previously described herein which are expected to be permanent and ongoing.

74.     As a direct and proximate result of the aforementioned incident and Defendants' conduct, Ritter's next-of-kin have suffered mental anguish, grief, loss of his services, support, society, companionship, and perspective inheritance pursuant to R.C. 2125.02 and other provisions of the Ohio Revised Code.

LAW OFFICES

BASHEIN & BASHEIN
CO., L.P.A.

TERMINAL TOWER

35TH FLOOR

50 PUBLIC SQUARE

CLEVELAND OH 44113

(216) 771-3239

24

75.     As a direct and proximate result of Defendants' conduct, Plaintiff and beneficiaries of the Estate have, therefore, been injured and damaged in a sum in excess of TWENTY-FIVE THOUSAND AND 00/100 DOLLARS ($25,000.00) for compensatory damages.

## COUNT THREE
### (Survivorship)

76.     Plaintiff incorporates by reference all the allegations contained in this Complaint as if fully rewritten herein.

77.     At all times mentioned herein, Officer Ritter suffered fear of impending death, and severe and conscious pain and suffering from the time of his initial gunshot wound until his death, thus entitling the Estate to survivorship damages against all Defendants and punitive damages against one or more of the individual Defendants.

78.     As a direct and proximate result of Defendants' conduct, Plaintiff and beneficiaries of the Estate have, therefore, been injured and damaged in a sum in excess of TWENTY-FIVE THOUSAND AND 00/100 DOLLARS ($25,000.00) for compensatory and punitive damages.

## COUNT FOUR
### (Spoilation of Evidence and Obstruction)

79.     Plaintiff incorporates by reference all the allegations contained in this Complaint as if fully rewritten herein.

80.     At all times mentioned herein, one or more of the Defendants, including the City of Cleveland, knew of probable litigation as early as late July of 2024, when counsel for the Decedent sent a letter of representation to the City of Cleveland including a preservation letter of evidence requiring the City to preserve all relevant evidence in this case.

LAW OFFICES

BASHEIN & BASHEIN
CO., L.P.A.

TERMINAL TOWER

35TH FLOOR

50 PUBLIC SQUARE

CLEVELAND OH 44113

(216) 771-3239

25

81.     Following the July 4, 2024 killing of Officer Ritter, one or more of the Defendants, and the City of Cleveland, through its agents and employees, willfully destroyed and/or concealed and/or failed to preserve evidence in a manner designed to disrupt Plaintiff's current case.

82.     Following the July 4, 2024 killing of Officer Ritter, Defendant City of Cleveland, through its employees, interfered with, obstructed, and shut down the OPS investigation into Defendants, City of Cleveland's Division of Police's actions leading up to the death of Officer Ritter.

83.     As a result of one or more of the Defendants' destruction, obstruction, and spoilation of evidence, Ohio law further requires a jury instruction addressing the inferences that may be drawn from any destroyed or withheld evidence designed to disrupt Plaintiff's claims.

84.     As a direct and proximate result of one or more of the Defendants' conduct, Plaintiff and beneficiaries of the Estate have, therefore, been injured and damaged in a sum in excess of TWENTY-FIVE THOUSAND AND 00/100 DOLLARS ($25,000.00) for compensatory and punitive damages.

## COUNT FIVE
### (Civil Liability for Criminal Acts Under R.C. 2307.60
### Against All Defendants)

85.     Defendants have committed several criminal acts for which Plaintiff "may recover full damages." R.C. 2307.60(A)(1). These criminal acts include but are not limited to the following:

a.  **Dereliction of Duty under R.C. 2921.44.** As set forth above, Defendants negligently (1) failed to serve a lawful warrant without delay and (2) failed to prevent or halt the commission of an offense and/or failed to apprehend an

LAW OFFICES

BASHEIN & BASHEIN
CO., L.P.A.

TERMINAL TOWER

35TH FLOOR

50 PUBLIC SQUARE

CLEVELAND OH 44113

(216) 771-3239

26

offender when it was within their power to do so alone or with available assistance. Additionally, Defendants negligently failed to perform their lawful duty in a criminal case and/or recklessly failed to perform a duty expressly imposed by law with respect to their offices.

b. **Intimidation under R.C. 2921.03.** As set forth above, Defendants knowingly by force, unlawful threat of harm to person or property, and/or by filing, recording, or otherwise using a materially false writing with malicious purpose, in bad faith, or in a wanton or reckless manner, attempted to influence, intimidate, or hinder a public servant in the discharge of their duties.

c. **Obstructing Official Business under R.C. 2921.31.** As set forth above, Defendants, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, engaged in acts that hampered and/or impeded a public official in the performance of their lawful duties.

d. **Disrupting Public Services under R.C. 2909.04.** As set forth above, Defendants purposely by any means or knowingly by damaging or tampering interrupted or impaired police public service communications.

e. **Unauthorized Use of Property under R.C. 2913.04.** As set forth above, Defendants knowingly gained access or caused access to be gained to the OPS computers, computer system, and/or computer network without the consent of, or beyond the scope of the express or implied consent of, the owner of the computers, computer system, and/or computer network.

LAW OFFICES

BASHEIN & BASHEIN
CO., L.P.A.

TERMINAL TOWER

35TH FLOOR

50 PUBLIC SQUARE

CLEVELAND OH 44113

(216) 771-3239

27

     f.   Additional criminal conduct that may be established during discovery or at the trial of this action.

86.    As a direct and proximate result of one or more of the Defendants' conduct, Plaintiff and beneficiaries of the Estate have, therefore, been injured and damaged in a sum in excess of TWENTY-FIVE THOUSAND AND 00/100 DOLLARS ($25,000.00) for compensatory and punitive damages.

**COUNT SIX**
**(Intentional Infliction of Emotional Distress**
**Against Defendant, Dorothy Todd, Only)**

87.    Plaintiff incorporates by reference all the allegations contained in this Complaint as if fully rewritten herein.

88.    At all times mentioned herein, Defendant Todd intentionally, outrageously, and/or deliberately inflicted emotional distress on Officer Ritter's parents and next-of-kin when the family was notified via telephone of his death in direct violation of the City of Cleveland's rules, policies, procedures, GPOs, and standard practices recognized by every municipality and police department within the United States.

89.    Defendant Todd deliberately failed to contact local law enforcement where Officer Ritter's parents resided so they could promptly go to their residence for proper notification and for the safety of the family given the extraordinary grief and tragic news that they would be given.

90.    Officer Ritter's father, Jon Ritter, was a retired police officer and was well aware of the proper notification procedures for a death including an officer in the line of duty at both the City of Cleveland Division of Police as well as standard in police departments nationally.

LAW OFFICES

BASHEIN & BASHEIN
CO., L.P.A.

TERMINAL TOWER

35ᵀᴴ FLOOR

50 PUBLIC SQUARE

CLEVELAND OH 44113

(216) 771-3239

28

91.     Because of the family's knowledge (like all police officers' families) of the City of Cleveland's own protocols, policies, and procedures (and the standards and policies of police departments nationally) in notification of death, Officer Ritter's family was of the belief that the initial phone notification regarding Officer Ritter's death was either a hoax or not accurate.

92.     As a result of the initial contact, Officer Ritter's next-of-kin spent a lengthy period of time attempting to confirm his death causing them further severe emotional trauma, mental anguish, and grief.

93.     At all times mentioned herein, Defendant Todd's deliberate actions following the death of Officer Ritter including requiring officers to attend his funeral using vacation time, and her deliberate failure and refusal to escort the family in a candlelight vigil at the National Memorial for Police Officers who were killed in the line duty held in Washington, D.C., in May of 2025, constituted a continuing and deliberate intentional infliction of distress on the family and was designed by Todd to inflict continued pain and suffering on the Ritter family because they had complained to OPS about her egregious conduct. In Washington, D.C., Todd was nowhere to be found at the National Law Enforcement Officers Memorial event to escort the family of Cleveland's fallen officer despite being sent there at the taxpayer's expense.

94.     As a direct and proximate result of Defendants' conduct, Plaintiff and beneficiaries of the Estate have, therefore, been injured and damaged in a sum in excess of TWENTY-FIVE THOUSAND AND 00/100 DOLLARS ($25,000.00) for compensatory and punitive damages.

## PRAYER

WHEREFORE, Plaintiff prays for compensatory and punitive damages against

Defendants in excess of TWENTY-FIVE THOUSAND AND 00/100 DOLLARS ($25,000.00)

LAW OFFICES

BASHEIN & BASHEIN
CO., L.P.A.

TERMINAL TOWER

35TH FLOOR

50 PUBLIC SQUARE

CLEVELAND OH 44113

(216) 771-3239

29

with their litigation expenses, attorney fees, costs, and any other relief the Court feels appropriate.

Respectfully Submitted,

**/s/ *W. Craig Bashein***

W. Craig Bashein (0034591)
cbashein@basheinlaw.com
Thomas J. Sheehan (0069601)
tjs@basheinlaw.com
John P. Hurst (0010569)
jhurst@basheinlaw.com
**BASHEIN & BASHEIN CO., L.P.A.**
50 Public Square
Terminal Tower, 35th Floor
Cleveland, OH  44113
(216) 771-3239
(216) 781-5876 (fax)

**/s/ *Paul W. Flowers***

Paul W. Flowers (0046625)
pwf@pwfco.com
Louis E. Grube (0091337)
leg@pwfco.com
Michael J. Factor (0105922)
mjf@pwfco.com
**FLOWERS & GRUBE**
50 Public Square
Terminal Tower, 40th Floor
Cleveland, OH 44113
(216)344-9393
(216) 344-9395 (fax)

*Attorneys for Plaintiff*

LAW OFFICES

BASHEIN & BASHEIN
CO., L.P.A.

TERMINAL TOWER

35TH FLOOR

50 PUBLIC SQUARE

CLEVELAND OH 44113

(216) 771-3239

30

## JURY DEMAND

Trial by jury is hereby demanded.

*/s/  W. Craig Bashein*

W. Craig Bashein (0034591)

*Attorney for Plaintiff*

LAW OFFICES

BASHEIN & BASHEIN
CO., L.P.A.

TERMINAL TOWER

35ᵀᴴ FLOOR

50 PUBLIC SQUARE

CLEVELAND OH 44113

(216) 771-3239

31